STONE'S AUTO MART, INC., a Minnesota corporation, Scott J. Thomas, Ann Elizabeth Thomas, Plaintiffs,

v.

CITY OF ST. PAUL, MINNESOTA, a Municipal Corporation; St. Paul City Council; and individual City Council members, James Scheibel, Robert Long, Kiki Sonnen, Janice Rettman, Roger Goswitz, Tom Dimond, Defendants.

No. Civ. 4–89–352.

United States District Court, D. Minnesota, Fourth Division.

Sept. 18, 1989.

---

Earl P. Gray and Richard J. Malacko, St. Paul, Minn., for plaintiffs.

Edward P. Starr, St. Paul City Atty. and Jerome J. Segal, Asst. City Atty., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion for summary judgment or, in the alternative, for an order prohibiting discovery into the city council members' motivation in denying plaintiffs' rezoning petition. The motion for summary judgment will be denied. An order tailoring discovery based on the possibility that the city council members are extended qualified immunity will be issued.

## FACTS

Plaintiff Stone's Auto Mart, Inc. (Stone's) is a Minnesota corporation which has been engaged, since 1982, in the business of selling used cars. Plaintiffs Scott J. Thomas and Ann Elizabeth Thomas are the shareholders of Stone's. The Thomases are black.

In 1986, Stone's moved from 1340 West Seventh Street to 1174 West Seventh Street in St. Paul. The property at 1174 West Seventh Street was originally zoned "B–2 Business," a zoning classification which does not permit a used car lot. In order for Stone's to locate there, the lessors of the property petitioned the St. Paul City Council to have the property rezoned as "B–3 Business." The lessors of 1174 West Seventh Street are white. The city council approved the rezoning petition on December 11, 1986.

In 1988, plaintiffs entered into a contract to purchase the property at 1200 West Seventh Street, which is one lot removed from 1174 West Seventh Street. That property was also zoned "B–2 Business." Accordingly, plaintiffs petitioned to have the property rezoned as "B–3 Business." On March 23, 1989, the St. Paul City Council by the unanimous vote of its members (with one member absent) voted to deny the rezoning request. In denying the request, the city council adopted the recommendation of the zoning committee staff. The staff report noted that the predominant land use along the segment of West Seventh Street at issue is residential. The report found that the businesses in the area tended to be located at intersections and tended to be retail or service oriented businesses falling within the "B–2 Business" classification. The report concluded that to allow "a more intensive, auto-oriented use" on the land owned by plaintiffs would be inconsistent with the policies of the city's zoning plan. Complaint, Exh. B.

Plaintiffs allege that the reasons given in the zoning committee staff report for denying the rezoning request are not factually correct and that the policies cited as a basis for the decision are not consistently applied. Plaintiffs claim that the given reasons are a pretext for an effort to prevent "the placement of black owned and operated businesses in the white business community." Complaint, par. 20.

Plaintiffs filed suit under 42 U.S.C. §§ 1982, 1983 and 1985 against the City of St. Paul, its city council and the six individual council members who voted on plaintiffs' rezoning request. The city council and the defendant council members have moved the Court for summary judgment on the grounds of legislative immunity. Should that motion be denied, defendants request an order prohibiting discovery into the motives of the council members in denying the rezoning of the plaintiffs' property.

## DISCUSSION

### I. *Legislative Immunity*

The Court may grant summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In their motion, both the city council and the individual council members request summary judgment on the basis of the absolute immunity accorded to public officials acting in a legislative capacity. The city council is not protected by the doctrine of legislative immunity. In *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court ruled that municipalities are not entitled to immunity in actions brought pursuant to section 1983. The Court held that "[l]ocal governing bodies ... can be sued directly under section 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. 2035–2036. The city council's decision to deny plaintiffs' rezoning request is an official decision of the city's governing body. The city council can therefore be held liable if that decision is found to constitute a violation of the plaintiff's civil rights. *See Rollins v. Farmer*, 731 F.2d 533, 535 (8th Cir.1984) (local governing unit may not assert the immunity of its officials as a defense to liability under section 1983); *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir.1984) (same); *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 740–41 (8th Cir.1982) (municipality may be liable for "erroneous reversion" of plaintiff's zoning classification), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983); *International Broadcasting Corp. v. City of Bismarck*, 697 F.Supp. 1094, 1095–96 (D.N.D.1987) (absolute legislative immunity does not extend to local governing bodies).

■ Individuals who serve as public officials may be accorded absolute immunity so that they may "speak and act freely and fearlessly in the discharge of their important official functions." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Those accorded absolute immunity receive it "because of the special nature of their responsibilities" rather than "because of their particular location within the Government." *Butz v. Economou*, 438 U.S. 478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Legislators are absolutely immune from suits for damages so long as their conduct was within the sphere of legitimate legislative activity. *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (members of governing board of regional planning agency immune to extent they were acting in a legislative capacity).

The scope of absolute immunity extends no further than its justification warrants. *Harlow v. Fitzgerald*, 457 U.S. 800, 810–11, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982).

Unfortunately, it is often difficult to determine whether government action concerning zoning is legislative or administrative. In a section 1983 case concerning a rezoning decision, the Eighth Circuit noted that a municipal act regarding zoning that is "legislative on its face" may be administrative in character. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611 n. 5 (8th Cir. 1980). The court further stated:

> As to some reclassifications of property, then, it might be argued that municipal legislators have only a qualified immunity because they exercise only a limited discretion and do not operate under the legislator's duty to "conceive public policy from the myriad policy options open to the sovereign."

*Id.*, quoting *Adler v. Lynch*, 415 F.Supp. 705, 712 (D.Neb.1976).

Defendants correctly note that the Minnesota Supreme Court has consistently held that the adoption or amendment of a zoning ordinance is a legislative act. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414–15 (Minn.1981); *State by Rochester Association of Neighborhoods v. City of Rochester*, 268 N.W.2d 885, 888–89 (Minn. 1978); *Beck v. City of St. Paul*, 304 Minn. 438, 231 N.W.2d 919, 925 (1975). That holding, however, is reached only for the purpose of determining the appropriate standard for judicial review of zoning decisions in the state courts.[1] It does not determine the scope of immunity accorded to municipal officials under federal law.

Two tests for distinguishing between legislative and administrative zoning actions were suggested in *Developments in the Law–Zoning*, 91 Harv.L.Rev. 1427, 1508–13 (1978). The first test concerns the type of facts on which the decision is based. "Legislative facts are normally generalizations concerning a policy or state of affairs: they 'do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion.'" 91 Harv.L.Rev. 1510–11, quoting K. Davis, *Administrative Law Treatise*, 199 (1958). Administrative facts, which are more often referred to as adjudicative facts, are specific to particular individuals or situations. They are "'roughly the kind of facts that go to a jury in a jury case.'" 91 Harv.L.Rev. at 1511, quoting Davis, *supra*.

The second test concerns the particularity of the impact of the zoning action. Legislative action affects a class of persons and is not taken against "specific identifiable people." 91 Harv.L.Rev. at 1511. Administrative action singles out specifiable individuals and affects them directly.

> For example, a decision to deny a variance for a shopping center will specifically affect the developer who applied for the variance. Such a decision would be considered administrative whether it was based primarily on general policy considerations relating to commercial development, or on specific findings as to the suitability of the site for the proposed project.

91 Harv.L.Rev. at 1511.

This test was employed by United States Court of Appeals for the First Circuit in *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir. 1984). In that case, the court of appeals held that members of a municipal planning board were not entitled to absolute immunity from claims that the board imposed unwarranted conditions on the approval of plaintiff's subdivision because of racial animus. 724 F.2d at 261–62. The test was also adopted in *Visser v. Magnarelli*, 542 F.Supp. 1331, 1333 (N.D.N.Y.1982). It is, moreover, consistent with the results in many other cases. In *O'Brien v. City of Greers Ferry*, 873 F.2d 1115 (8th Cir.1989), for example, the defendant aldermen

---

1. In *State by Rochester Association of Neighborhoods v. City of Rochester*, 268 N.W.2d at 888, the court stated:

> As a legislative act, a zoning or rezoning classification must be upheld unless opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare, or that the classification amounts to a taking without compensation.... Our narrow scope of review reflects a policy decision that a legislative body can best determine which zoning classifications best serve the public welfare.
>
> (Citations omitted.)

sought immunity from a claim that their votes against appropriating funds to defend a lawsuit against the sole alderwoman was motivated by sex-based animus and constituted retaliation for the alderwoman's exercise of free speech. Stating that "[n]ormally, a legislative act is a formulation of policy governing future conduct for all or a class of the citizenry," the court of appeals held that defendants were not cloaked with legislative immunity because the city council's vote on the appropriation was an executive, not a legislative, act. 873 F.2d at 1119.

This result is consistent with the results provided by the two tests described above. Although the city council's decision not to appropriate funds for the alderwoman's defense could have been based on an analysis of legislative facts (*i.e.*, the debate may have concerned whether or not the city should, as a matter of policy, indemnify its public officials for acts taken in their official capacity), it was apparently based only on an inquiry into administrative facts (*i.e.*, whether or not the city should indemnify this particular alderperson in this particular situation). 873 F.2d at 1119. The decision not to appropriate funds was also a decision that affected a single identifiable individual, rather than a class of persons. *Id.*

Another example is provided by *Haskell v. Washington Township*, 864 F.2d 1266 (6th Cir.1988). In that case, city trustees who had enacted an allegedly unconstitutional zoning ordinance to prevent the opening of an abortion clinic argued that they were protected by legislative immunity. The court of appeals noted that although zoning is ordinarily considered a legislative activity, "it is not always legislative for the purposes of immunity." 864 F.2d at 1278. It held that:

> If the underlying purpose of zoning activity is to establish general policy, then it is legislative.... If, however, "the action 'single[s] out specifiable individuals and affect[s] them differently from others,' it is administrative."

*Id., quoting Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984). That language adopts the second of the two tests described above as a means for distinguishing between legislative and administrative zoning actions. Ultimately, the court of appeals remanded the case to the district court for a determination of whether the allegedly injurious acts committed by the defendant trustees were legislative, administrative or neither. 864 F.2d at 1278. *See also, Scott v. Greenville County*, 716 F.2d 1409, 1423–24 (4th Cir.1983) (reversing grant of legislative immunity to county council members who denied plaintiff building permit allegedly because of race discrimination).

■ Application of either of the two tests to the facts of this case results in the council members' actions being found to be administrative, not legislative. With regard to the first test, the city council's decision was based on particularized facts concerning the character of the area in which plaintiffs' property was located, the nature of the use proposed by plaintiffs, the likely effect of that use on the area and the appropriateness of that use under the previously-adopted zoning policy. These are administrative facts, not policy-oriented, legislative facts. Regarding the second test, the decision not to rezone was one affecting specifiable individuals, not a broad class of persons. The decision did not involve the establishment of a general policy, so it was not legislative. Therefore, under both tests, the decision not to rezone 1200 West Seventh Street must be considered an administrative decision, and therefore the individual city council members responsible for that decision are not entitled to absolute legislative immunity.

## II. *Discovery*

■ The council members are, of course, still protected by the qualified immunity which protects all public officials. *See O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1119 (8th Cir.1989). Qualified immunity shields government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitz-*

*gerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under this test, if the defendant council members decided plaintiffs' rezoning application based on the race of the plaintiffs, they are not protected by qualified immunity. The problem in this case is that a decision on whether qualified immunity applies cannot be made until a decision is made on the merits of plaintiffs' claim.

■ Defendants have requested an order prohibiting discovery into the motivations of defendant council members. The motivation of the council members is precisely what is at issue and, therefore, is discoverable. *See, e.g., Martin v. D.C. Metropolitan Police Department,* 812 F.2d 1425, 1433 (D.C.Cir.1987) ("where intent ... [is] an essential element of plaintiff's claim, plaintiff must be afforded an opportunity to overcome an asserted immunity with an offer of proof of the defendant's alleged unconstitutional purpose"). One of the important purposes of qualified immunity, however, is to protect public officials from the "broad-ranging discovery" which can be "peculiarly disruptive of effective government." *Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738. The courts have authority to tailor discovery to further the purposes behind the doctrine of qualified immunity. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Ginter v. Stallcup,* 869 F.2d 384, 387–88 (8th Cir.1989).

Because depositions are the most burdensome and disruptive form of discovery in cases such as this one, the Court will prohibit plaintiffs from taking the depositions of the defendant council members unless they secure the defendant's consent or an appropriate order of this Court. Before the Court will issue an order allowing the depositions to be taken, however, the plaintiffs must support their allegations with evidence sufficient to permit the inference that race was a motivating factor in the council members' decision not to approve plaintiffs' request for a rezoning.[2] In that regard, plaintiffs may proceed with all other methods of discovery in order to develop their case.

CONCLUSION

Accordingly, based on the foregoing, and upon all the files, records and proceedings in this case,

IT IS ORDERED that:

1. defendants' motion for summary judgment is denied;

2. defendants' alternative motion for an order restricting discovery is granted;

3. plaintiffs are prohibited from taking the depositions of the defendant council members unless plaintiffs have secured either the consent of the council member or an order of this Court permitting the deposition; and

4. this Court will allow plaintiffs to depose the defendant council members only upon evidence sufficient to permit the inference that race was a motivating factor in the council members' decision to deny plaintiffs' request for rezoning.

---

**2.** Plaintiffs' motion for an order permitting the depositions of the defendant council members

would, of course, be brought before the United States Magistrate.